UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| RAMIRO XILOJITZEP, | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | Civil Action No. 22-3788 (RBW) |
| NATIONAL RAILROAD PASSENGER CORPORATION, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

On December 22, 2022, the plaintiff, Ramiro Xilojitzep, initiated this civil action against the defendant, the National Railroad Passenger Corporation ("Amtrak"), asserting violations of the District of Columbia Minimum Wage Revision Act ("DCMWRA"), D.C. Code §§ 32-1001–15, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19. See Complaint ("Compl.") at 1, ECF No. 1; see also Second Amended Complaint ("2d. Am. Compl.") at 1, ECF No. 26. Pending before the Court are (1) the defendant's motion to dismiss the Second Amended Complaint, see Defendant National Railroad Passenger Corporation's Motion to Dismiss Plaintiff's Second Amended Complaint ("Def.'s Mot.") at 1, ECF No. 28; see also Defendant National Railroad Passenger Corporation's Memorandum in Support of its Motion to Dismiss Plaintiff's Second Amended Complaint ("Def.'s Mem.") at 1, ECF No. 28-1, and (2) the plaintiff's motion for discovery, see Plaintiff's Motion for Discovery to Respond to Extrinsic Evidence and Disputed Jurisdictional Facts in Defendant's Motion to Dismiss the Second Amended Complaint ("Pl.'s Discovery Mot.") at 1, ECF No. 30. After carefully considering all

1

of the relevant materials submitted by the parties,[1] the Court concludes for the following reasons that it must grant in part and deny in part the plaintiff's motion for discovery and deny without prejudice the defendant's motion to dismiss pending consideration of the information acquired pursuant to the jurisdictional discovery granted by the Court.

## I.     BACKGROUND

To reiterate, the plaintiff brings this civil action against the defendant, asserting violations of the DCMWRA and the FLSA.  See 2d. Am. Compl. at 1.  The plaintiff seeks "wages for unpaid overtime pay, minimum wage pay, and unpaid straight time pay from February 26, 2015[,] to May 31, 2022.  [ ] The period for which unpaid wages are sought shall be referred to as the '[r]elevant [p]eriod.'"  Id. ¶ 1.  The plaintiff requests that the Court enter a judgment against the defendant (1) "based on violations of the DCMWRA, in the amount of [the p]laintiff's unpaid wages, plus . . . three times the amount of unpaid wages as liquidated damages"; (2) " based on violations of the FLSA, in the amount of [the p]laintiff's unpaid wages, plus . . . the amount of unpaid wages as liquidated damages"; and (3) "for [the plaintiff's] litigation costs and attorney's fees[.]"  Id. ¶¶ A–C.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) Defendant National Railroad Passenger Corporation's Motion to Dismiss ("Def.'s Mot. to Dismiss Pl.'s Am. Compl."), ECF No. 13; (2) the Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss Second Amended Complaint ("Pl.'s Opp'n to Def.'s Mot. to Dismiss Am. Compl."), ECF No. 15; (3) the Plaintiff's Motion for Leave to File Second Amended Complaint and Memorandum of Points and Authorities in Support of Motion ("Pl.'s Mot. to Am. Compl."), ECF No. 17; (4) Defendant National Railroad Passenger Corporation's Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint ("Def.'s Opp'n to Pl.'s Mot. to Am. Compl."), ECF No. 22; (5) the Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss Second Amended Complaint ("Pl.'s Opp'n"), ECF No. 29; (6) the Defendant's Opposition to Plaintiff's Motion for Discovery to Respond to Extrinsic Evidence and Disputed Jurisdictional Facts in Defendant's Motion to Dismiss the Second Amended Complaint ("Def.'s Discovery Mot. Opp'n"), ECF No. 33; (7) Defendant National Railroad Passenger Corporation's Reply in Support of its Motion to Dismiss Plaintiff's Second Amended Complaint ("Def.'s Reply"), ECF No. 34; and (8) the Plaintiff's Reply in Support of Motion for Discovery to Respond to Extrinsic Evidence and Disputed Jurisdictional Facts in Defendant's Motion to Dismiss the Second Amended Complaint ("Pl.'s Reply in Support of Discovery Mot."), ECF No. 36.

A. **Factual Background**

The plaintiff, a resident of the District of Columbia, alleges that he "was employed jointly by Cary B. Young, ([who conducted his business as] 'Young's Cleaning Services' (hereinafter 'Young')[2] and [the d]efendant from at least 2008 until May 31, 2022, when he resigned." Id. ¶ 1. The plaintiff represents that he "performed janitorial functions at A[mtrak]'s 'Ivy City Yard' . . . in the District of Columbia" during the relevant period. Id. The plaintiff explains that the "Ivy City Yard is an A[mtrak] maintenance facility[,]" and the "[p]laintiff's cleaning duties were unrelated to A[mtrak]'s railway operations." Id. ¶ 3. The plaintiff further alleges that Young kept the plaintiff's employment records, hired and "had the authority to terminate" the plaintiff, set the plaintiff's rate of pay, and paid the plaintiff. Id. ¶ 4.

The plaintiff also represents that both Young and the defendant shared supervisory authority over him; could hire, fire, or modify the terms of his employment; and provided him "with equipment, tools, supplies[,] and materials necessary . . . to complete his work." Id. ¶ 15. As an example of the purported shared supervisory authority that the plaintiff attributes to the defendant, the plaintiff alleges that he "would often interact with [the defendant's] [e]ngineer, Jorge Angulo[,] and on occasions when [the p]laintiff sought leave . . . he would obtain approval from Mr. Angulo." Id. In addition, the plaintiff alleges that at one point he sought "written verification of his daily work hours, and the length of time he had been assigned by Young to clean [the facility]" from Mr. Angulo, and Mr. Angulo "provided the written verification" to the plaintiff. Id.

---

[2] The plaintiff also notes that "[p]rior to being employed by Young, [he] performed janitorial functions for and on behalf of [the defendant] at the same location (Ivy City Yard) for another company. [That] company . . . had a contract with [the defendant] to provide cleaning services. When [it] lost the contract [to] Young[, the p]laintiff began working for Young at the same location." Id. ¶ 2. However, "[a]t all times relevant to this Complaint, Young employed [the p]laintiff to perform janitorial services[at] [the defendant's] Ivy City Yard [location]." Id. ¶ 3.

3

### B. Procedural Background

On December 22, 2022, the plaintiff filed his original Complaint in this case. See Compl. at 1. Then, on March 9, 2023, the plaintiff filed an Amended Complaint as of right, see Am. Compl. at 1, and on March 21, 2024, the Court granted the plaintiff leave to file his Second Amended Complaint, see Order at 6 (Mar. 21, 2024), ECF No. 25.

Then, on April 4, 2024, the defendant filed its motion to dismiss the plaintiff's Second Amended Complaint, arguing, inter alia, that the Railway Labor Act ("RLA"), 45 U.S.C. §§ 1.151–2.188, preempts this action because the plaintiff is seeking "to create contractual rights between a railroad and an employee[,]" and thus the plaintiff's claim would constitute a "major dispute" over which the Court lacks subject matter jurisdiction. Def.'s Mem. at 6. The plaintiff filed his opposition to the defendant's motion to dismiss on April 18, 2024. See Pl.'s Opp'n at 1. The plaintiff also filed a motion for discovery on that same date, see Pl.'s Discovery Mot. at 1, which the defendant opposes, see Def.'s Discovery Mot. Opp'n at 1. Later that day, the defendant also filed its reply in support of its motion to dismiss the Second Amended Complaint. See Def.'s Reply at 1. And, on May 13, 2024, the plaintiff filed his reply to the defendant's opposition to his discovery motion. See Pl.'s Reply in Support of Discovery Mot. at 1. On March 20, 2025, the parties appeared before the Court for a Motion Hearing at which they made oral arguments regarding the plaintiff's discovery motion.

## II.  STANDARD OF REVIEW

### A.  Federal Rule of Civil Procedure 12(b)(1)

"Federal district courts are courts of limited jurisdiction[,]" Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and therefore, "[a] motion for dismissal under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's

4

jurisdiction[,]'" Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)).  Thus, the Court is obligated to dismiss a claim if it "lack[s] . . . subject matter jurisdiction[.]"  Fed. R. Civ. P. 12(b)(1).  And, because "it is to be presumed that a cause lies outside [the Court's] limited jurisdiction," Kokkonen, 511 U.S. at 377, the plaintiff bears the burden of establishing by a preponderance of the evidence that a district court has subject matter jurisdiction, see Nurse v. Sec'y of Air Force, 231 F. Supp. 2d 323, 326 (D.D.C. 2002) (Walton, J.) (citations omitted).

In deciding a motion to dismiss based upon lack of subject matter jurisdiction, the Court "need not limit itself to the allegations of the complaint."  Grand Lodge of the Fraternal Ord. of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001).  Rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case."  Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see also Jerome Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005).  Additionally, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'"  Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).  However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  Grand Lodge, 185 F. Supp. 2d at 13–14 (alterations in original) (citation and internal quotation marks omitted).  And, the Court "need not accept bare legal conclusions nor unsupported inferences."  Campaign Legal Ctr. v. Fed. Election Comm'n, No.

22-cv-3319 (CRC), 2024 WL 4263853, at *5 (D.D.C. Sept. 23, 2024) (citing Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002)).

**B.     Jurisdictional Discovery**

The Supreme Court has held that "discovery is available to ascertain the facts bearing on [jurisdictional] issues." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n.13 (1978). Moreover, a plaintiff's "burden to demonstrate entitlement to jurisdictional discovery is not onerous[,]" see Aljabri v. bin Salman, 106 F.4th 1157, 1165 (D.C. Cir. 2024); a plaintiff need only have "a good faith belief that such discovery will enable it to show that the court has . . . jurisdiction over the defendant[,]" Williams v. Romarm, SA, 756 F.3d 777, 786 (D.C. Cir. 2014) (citation omitted). However, "mere conjecture or speculation is not enough." Id. (quoting FC Inv. Grp. LC v. IFX Mkts., Ltd., 529 F.3d 1087, 1091 (D.C. Cir. 2008)) (internal quotation marks omitted). Indeed, courts have denied jurisdictional discovery when they could "not see what facts additional discovery could produce that would affect [their] jurisdictional analysis." Erwin-Simpson v. AirAsia Berhad, 985 F.3d 883, 892 (D.C. Cir. 2021) (holding that the district court did not abuse its discretion in dismissing the case below without granting discovery) (citation and internal quotation marks omitted).[3]

"When faced with a motion to dismiss for lack of . . . jurisdiction, a plaintiff is 'entitled to reasonable discovery.'" Lewis v. Mutond, No. 16-cv-1547 (RCL), 2021 WL 4355421, at *4 (D.D.C. Sept. 24, 2021) (quoting Diamond Chem. Co., Inc. v. Atofina Chems., Inc., 268 F. Supp. 2d 1, 15 (D.C. Cir. 2003)). "It is well established that [a] 'district court has broad

---

[3] See also Ass'n of Flight Attendants-CWA, AFL-CIO v. United Airlines, Inc., 583 F. Supp. 3d 162, 170 (D.D.C. 2022) (noting that when the parties do not raise factual disputes, and instead only dispute the characterization of the facts alleged, the Court need not grant jurisdictional discovery to resolve jurisdictional challenges raised in a motion).

6

discretion in its resolution of [jurisdictional] discovery problems.'" FC Inv. Grp. LC, 529 F.3d at 1093 (quoting Naartex Consulting Corp. v. Watt, 722 F.2d 779, 788 (D.C. Cir. 1983)).  In other words, "[a] party is entitled to jurisdictional discovery if [he] shows that [he] can supplement [his] jurisdictional allegations through discovery[,]" and "[t]his is so even where the party has failed to establish a prima facie case of [ ] jurisdiction . . . as long as the party has at least a good faith belief that discovery will enable [him] to establish personal jurisdiction." Blount v. U.S. Sec. Assocs., 930 F. Supp. 2d 191, 197 (D.D.C. 2013) (citations and internal quotation marks omitted).  However, as already noted, "[r]equests for jurisdictional discovery . . . 'cannot be based on mere conjecture or speculation.'" Lewis, 2021 WL 4355421, at *4 (quoting FC Inv. Grp. LC, 529 F.3d at 1094).

### III.   ANALYSIS

The plaintiff seeks to conduct discovery regarding "the numerous disputed factual assertions raised by [the d]efendant in its [m]otion to [d]ismiss his claims under the Fair Labor Standards Act ('FLSA') and District of Columbia Minimum Wage Revision Act ('DCMWRA'). ECF No. 13."[4]  Pl.'s Discovery Mot. at 1.  The parties dispute whether the defendant was an employer of the plaintiff; whether the plaintiff was supplementing the work of the defendant's existing employees; the scope and nature of work for which the defendant contracted with Young; whether the plaintiff was subject to a collective bargaining agreement; and whether the

---

[4] In addition to jurisdictional discovery, the plaintiff also requests broader discovery to respond to the defendant's motion to dismiss. See Pl.'s Discovery Mot. at 1. The breadth of the plaintiff's additional requested discovery borders on merits discovery and would be inappropriate to approve at this stage of the case. See Cockrum v. Donald J. Trump for President, Inc., 319 F. Supp. 3d 158, 188 (D.D.C. 2018) (criticizing the plaintiffs' jurisdictional discovery request as "ill-defined and overly broad" and concluding that the "[p]laintiffs have failed to specifically tailor their discovery requests to jurisdictional matters") (citing Coal. for Mercury-Free Drugs v. Sebelius, 725 F. Supp. 2d 1, 5 (D.D.C. 2010), aff'd, 671 F.3d 1275 (D.C. Cir. 2012)); see also Coal. for Mercury-Free Drugs, 725 F. Supp. 2d at 5 ("The Court also concludes that the plaintiffs' request for jurisdictional discovery was not narrowly tailored to produce information relevant to the issue of standing and thus ordering jurisdiction discovery is not warranted."). In any event, it would be premature for the Court to grant the plaintiff's motion for broader discovery in response to the defendant's motion to dismiss because the Court ultimately denies the motion to dismiss without prejudice.

RLA grievance procedure is the plaintiff's "exclusive remedy for raising [this] dispute[ between himself and the defendant.]" Def.'s Mem. at 6.

The RLA "was enacted in an effort to promote stability in labor management relations within the railroad industry." Air Line Pilots Ass'n, Int'l v. E. Air Lines, Inc., 701 F. Supp. 865, 872 (D.D.C. 1988) (citing 45 U.S.C. §§ 151–88 (1987)), aff'd, 889 F.2d 291 (D.C. Cir. 1989). To that end, "the RLA establishes a mandatory arbitral mechanism for 'the prompt and orderly settlement' of two classes of disputes—'major disputes' and 'minor disputes.'" Brown v. Ill. Cent. R.R. Co., 254 F.3d 654, 658 (7th Cir. 2001). Major disputes "relate to the formation of collective bargaining agreements [('CBAs')] or efforts to secure them"; in other words, disputes that involve efforts to establish contractual obligations between employers in the railway industry and their alleged employees. Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994) (internal quotation marks omitted) (quoting Consol. Rail Corp. v. Ry. Lab. Execs.' Assn., 491 U.S. 299, 302 (1989)). Minor disputes, on the other hand, are disputes "growing out of grievances or out of the interpretation or application of [labor] agreements concerning rates of pay, rules, or working conditions[.]" 45 U.S.C. § 153(i); see Hawaiian Airlines, 512 U.S. at 256 ("We have defined minor disputes as those involving the interpretation or application of existing labor agreements.").

Minor disputes "must be resolved [ ] through the RLA mechanisms, including the carrier's internal dispute-resolution processes and an adjustment board established by the employer and the unions." Hawaiian Airlines, 512 U.S. at 256 (citing 45 U.S.C. § 184). "Thus, a determination that [an employee's claims] constitute a minor dispute would pre[]empt [the employee's civil] [ ] action[.]" Id. Specifically, a "claim will be preempted if it cannot be adjudicated without interpreting the CBA, or if it can be 'conclusively resolved' by interpreting

8

the CBA." Brown, 254 F.3d at 658 (quoting Hawaiian Airlines, 512 U.S. at 261–62).  However, "not every dispute concerning employment, or tangentially involving a provision of a collective[ ]bargaining agreement, is pre[]empted[,]" Hawaiian Airlines, 512 U.S. at 260 (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985)); see Miglio v. United Airlines, No. C13-573RAJ, 2014 WL 1089285, at *5 (W.D. Wash. Mar. 17, 2014) ("That a CBA bears on the resolution of a [ ] claim is insufficient to preempt the claim, it must be necessary to resolve competing interpretations of the CBA."), and "'purely factual questions' about an employee's conduct or an employer's conduct and motives do not 'requir[e] a court to interpret any term of a collective[ ]bargaining agreement,'" Hawaiian Airlines, 512 U.S. at 261 (quoting Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 407 (1988)).

"[T]he plaintiff's basis for believing that discovery will yield facts showing that this Court can exercise jurisdiction over the defendant is minimal," Yang v. Pao, No. 19-cv-1355 (RBW), 2020 WL 13042161, at *3 (D.D.C. Nov. 30, 2020), and the Court therefore concludes that here, based on the current record, it must grant the plaintiff's request for jurisdictional discovery.  Moreover, the plaintiff has advanced multiple allegations that he contends establish his good faith belief that jurisdictional discovery will establish the Court's jurisdiction over this case, namely that (1) "documents that identify [the defendant's] collective bargaining unit and how it [is] defined, union membership listings, [the defendant's] guidelines for union membership, [and] records of union benefits administered," Pl.'s Discovery Mot. at 5, could help the Court determine whether it has jurisdiction because it could clarify whether the plaintiff was subject to a CBA or, alternatively, whether he was an employee whose work was the same as that of employees covered by a CBA and the CBA status of any other contractors who provide similar cleaning and maintenance services for the defendant; (2) "copies of invoices submitted

by Young to [the defendant]," as well as "copies of requests for proposals for cleaning services at the Ivy City Yard issued by [the defendant, and] job descriptions for [the defendant's] other cleaning staff," Pl.'s Discovery Mot., Exhibit ("Ex.") A (Declaration of Andrew Balashov Pursuant to Federal Rule 56(d)) ("Balashov Dec'l") at 2, ECF No. 30-1), could aid the Court in its analysis of whether the plaintiff was supplementing the work of the defendant's existing, CBA-covered "Utility Workers," Def.'s Reply at 4, potentially rendering the plaintiff's claims preempted by the RLA; (3) "the contract attached to Defendant's motion [to dismiss] is only for the period [from] September 1, 2015 to August 31, 2018[,]" Pl.'s Opp'n to Def.'s Mot. to Dismiss Am. Compl. at 29, and therefore additional contract documents covering the balance of the relevant period would potentially provide the Court with information necessary to conduct a thorough jurisdictional analysis; and (4) depositions of "Jorge Angula, the building engineer at the Ivy City Yard, Darnell M. Speight, the Lead Contract Administrator identified in [the d]efendant's extrinsic email[,] . . . the union representative for [the defendant's] employees," and the plaintiff's co-workers could potentially help the Court determine whether the plaintiff is or reasonably could have been subject to a CBA governed by the RLA, Pl.'s Discovery Mot. at 3–4 (citing Def.'s Mot., Exhibit ("Ex.") A (Contract Document POAA) at 4, ECF No. 28-2).  In addition, during the status conference held on March 20, 2025, the plaintiff requested all versions of the CBA that were in effect during the relevant period "between [the defendant] and the National Conference of Firemen & Oilers (the 'NCOF CBA') . . . [which were] made in accordance with the RLA[,]"[5] Def.'s Reply at 3 (citing Def.'s Reply, Ex. B (Agreement Between

---

[5] The defendant explains that "[the p]laintiff's allegation that he performed the same work as Utility Workers[,]" which the defendant contests, "places him squarely in a craft covered by the NCOF CBA . . . . [And, i]f [the p]laintiff was an employee working in a covered craft, he [would be] subject to the RLA's procedures."  Def.'s Reply at 4 (citing Hodges v. Atchison, Topeka & Santa Fe Ry. Co., 728 F.2d 414, 416–17 (10th Cir. 1984) (holding that "[e]ven though Mr. Hodges alleges breach of an employment agreement and not the collective bargaining agreement itself he is still obliged to seek relief primarily and exclusively through arbitration")).

10

The National Railroad Passenger Corporation and Its Employees Represented By The National Conference of Firemen & Oilers) ("NCOF CBA") at 1, ECF No. 34-2).  The defendant represents that it opposes the plaintiff's discovery motion "because (1) [the plaintiff] is already in possession of all information necessary to respond to [the defendant's] jurisdictional . . . arguments[;] (2) [the plaintiff] seeks parol evidence to contradict the plain language of the operative contract[;] and (3) [the plaintiff] misunderstands [the defendant's] jurisdictional position."[6]  Def.'s Discovery Mot. Opp'n at 2.  The Court is not persuaded by the defendant's arguments in opposition to the plaintiff's request for jurisdictional discovery.

      As the Court has noted, "discovery is available to ascertain the facts bearing on [jurisdictional] issues."  Oppenheimer, 437 U.S. at 351 n.13, and a plaintiff's "burden to demonstrate entitlement to jurisdictional discovery is not onerous[,]"Aljabri, 106 F.4th at 1165.  Indeed, a plaintiff need only have "a good faith belief that such discovery will enable it to show that the court has . . . jurisdiction[,]" Williams, 756 F.3d at 786 (citation omitted).  Here, the parties' factual disputes call into question the Court's jurisdiction over this case, particularly in regards to whether the RLA preempts any of the plaintiff's claims.  The plaintiff has expressed a good faith belief that jurisdictional discovery will enable him to establish the Court's jurisdiction over this case, and his good faith belief is grounded in factual disputes—not mere speculation, see Williams, 756 F.3d at 786, or disagreement over the characterization of otherwise agreed-upon facts, see Ass'n of Flight Attendants-CWA, AFL-CIO v. United Airlines, Inc., 583 F. Supp.

---

[6] The defendant elaborates that, "[i]n his Motion, [the plaintiff] contends that jurisdictional discovery[] is warranted because [the defendant] alleges that [the plaintiff] would be subject to a [CBA] and is covered by the [RLA]. [The plaintiff], however; misunderstands the crux of [the defendant's] position. Instead, [the defendant] contends if [the plaintiff] were an employee of [the defendant], as he alleges, he would be subject to a CBA."  Def.'s Discovery Mot. Opp'n at 6.  However, based on the parties' filings and their representations during the Court's March 20, 2025, motion hearing, the Court concludes that factual disputes regarding whether this Court has jurisdiction over the plaintiff's claims remain, and jurisdictional discovery will aid the Court in conducting its necessary jurisdictional analysis.

11

3d 162, 170 (D.D.C. 2022). Thus, before the Court may consider the other issues raised in this case, the Court concludes that the plaintiff will be permitted to conduct jurisdictional discovery.[7] Accordingly, it is hereby

### IV.     CONCLUSION

For the foregoing reasons, the Court concludes that it must grant in part and deny in part the plaintiff's motion for discovery and deny without prejudice the defendant's motion to dismiss pending consideration of the information acquired pursuant to the jurisdictional discovery granted by the Court. Specifically, the plaintiff's motion for discovery is granted to the extent it seeks jurisdictional discovery,[8] the scope of which shall be limited to (1) production of documents regarding the defendant's collective bargaining unit, union membership listings of employees performing work similar to the work performed by the plaintiff, and records of any RLA exemptions that apply to employees performing work similar to the work performed by the plaintiff during the relevant period; (2) invoices between Young and the defendant, as well as any request by the defendant for proposals related to cleaning services at the plaintiff's work location, job descriptions of the work performed by the plaintiff and the defendant's other cleaning staff at the location where the plaintiff worked during the relevant period; (3) any contract documents regarding the plaintiff's employment that were in effect during the relevant period, especially during the final eight weeks of the plaintiff's employment; and (4) depositions—substantively limited to the scope and nature of the work assigned to and

---

[7] In the interest of efficiency and conserving both judicial resources and the resources of the parties, the Court will deny without prejudice the defendant's pending motion to dismiss while the plaintiff conducts jurisdictional discovery. After jurisdictional discovery is completed, however, the defendant may request to have its motion to dismiss reinstated, supplement the motion, or file a new motion.

[8] Should the parties find that they have irreconcilable questions about the jurisdictional discovery that the Court has permitted pursuant to this Order, they are encouraged to file a motion with the Court requesting a status conference in order to resolve those questions.

performed by the plaintiff, the relationship between the plaintiff and the defendant, the relationship, if any, between the work performed by the plaintiff and the work performed by employees of the defendant who were covered by a CBA, and the applicability of the RLA to the plaintiff's claims—of Jorge Angula, Darnell M. Speight, the union representative for the defendant's employees, and the plaintiff's co-workers who worked at the same site as the plaintiff and had knowledge of his work there during the relevant period. The motion is denied without prejudice in all other respects.

REGGIE B. WALTON<br>
United States District Judge